Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
PERKOWSKI LEGAL, PC
515 S. Figueroa Street
Suite 1800
Los Angeles, California 90071
Telephone: (213) 340-5796

Attorneys for Plaintiff
BACKGRID USA, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BACKGRID USA, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> JENNIFER LOPEZ, <br><br> *Defendant.* | Case No. 2:25-cv-4464 <br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT** <br><br> *Jury Trial Demanded* |

Plaintiff BackGrid USA, Inc., for its Complaint against Defendant Jennifer Lopez, alleges as follows:

## JURISDICTION

1.   This action arises under the Copyright Act of 1976, Title 17 U.S.C. § 101 et seq. This Court therefore has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

## PARTIES

### *Plaintiff BackGrid*

2.   Plaintiff BackGrid USA, Inc. is an entity organized and existing under the laws of the State of California with its principal place of business in Redondo Beach, California.

3. BackGrid is a premier celebrity news and photo agency that provides the world's news outlets with real-time content from top photographers. It also maintains a library of photographs on a diverse range of subjects including celebrities, music, sports, fashion, and royalty.

4. BackGrid licenses its photographs to leading magazines, newspapers, and editorial clients, throughout the world.

5. BackGrid conducts business as a syndicator of photos and other media featuring popular content. The business model is predicated on licensing the use of work to many different licensees, each of which pays a fee to use or display.

### *Defendant Lopez*

6. Jennifer Lopez is a Grammy-nominated, multi-hyphenate entertainer whose career spans more than three decades. As a global pop icon, she has released multiple chart-topping singles and albums, including several certified gold and platinum. Widely recognized as one of the most influential Latin artists in the world, Ms. Lopez has been honored for her contributions to music, dance, and film, and was ranked No. 16 on VH1's list of the 100 Greatest Women in Music.

7. On information and belief, Ms. Lopez is domiciled in the State of California and resides in the city of Hidden Hills.

8. On information and belief, Ms. Lopez owns, operates, or is responsible for the content that appears on the account @jlo on the social media platform Instagram, and on the @JLo account on the social media platform on *X*, formerly Twitter.

### *Personal Jurisdiction and Venue*

9. This Court has personal jurisdiction over Ms. Lopez because she is domiciled and resides in this State and this judicial district.

10. Venue in this judicial district is proper under 28 U.S.C. § 1400(a).

///

## BACKGROUND FACTS

11. BackGrid owns and holds the copyright of two photographic images depicting Ms. Lopez arriving and departing the Amazon MGM Studios x Vanity Fair Party at Bar Marmont in Los Angeles on January 4, 2025, the night before the Golden Globe Awards (the "Images").

12. Within 90 days of first publication, the Images were registered with the U.S. Copyright Office as Reg. No. VA 2-431-133 (eff. Jan. 16, 2025).

13. BackGrid's photographer captured the Images to document and highlight the event itself, not to focus on Ms. Lopez specifically. Nevertheless, Ms. Lopez used the Images for her own purposes without contacting BackGrid or seeking a license.

14. Specifically, on January 5, 2025—the day of the Golden Globe Awards—Ms. Lopez, or someone acting with her authority and on her behalf, copied the Images and posted them to her official social media accounts on Instagram and $X$ (formerly Twitter).

15. The Images were used to promote Ms. Lopez's public appearances, boost user engagement, increase shareability, and lend credibility to her branded content—each of which enhanced the growth, reach, and perceived authority of Ms. Lopez's digital presence. Following her posts, the Images were rapidly disseminated across a wide range of web sites and third-party social media accounts, including high-visibility fan and fashion pages. One post appeared on an account with over 14 million followers, and others included: _jenniferlopez_fanclub, accesototalshow, adriennelandau, couturevision, dostin.jlover, glammonaco, jlo_chicago, jlomybff, jlopez.latin, jlover.4ever, jloverpr, lislopees, lucasbylucasdlarosa, marieclairerussia, merleginsberg, ritmo.do, silviatcherassi, and z_jlover.

16. One particularly egregious example of the unauthorized commercial exploitation of the Images occurred 22 minutes after Ms. Lopez's postings, when the fashion brand Adrienne Landau posted the Images to its official Instagram account.

The caption explicitly credited Ms. Lopez for "channeling old Hollywood glamour" while wearing an archival Adrienne Landau faux fur coat at the event. This use directly leveraged BackGrid's photographs to market the brand's products, showcasing the coat's connection to a celebrity appearance and generating promotional value for both the designer and Ms. Lopez, all without permission or compensation to BackGrid.

17. Ms. Lopez's unauthorized use of the Images is commercial in nature, intended for the purpose of self-promotion. For example, Ms. Lopez used the Images to spotlight the designer of her clothing and jewelry, leveraging the publicity from the event to promote her fashion affiliations and brand partnerships.

18. On January 16, 2025, a representative communicated to Ms. Lopez on behalf of BackGrid, notifying her of the infringements. In response, Ms. Lopez's representative confirmed that she was interested in an informal resolution, and after fruitful discussions by telephone over the following weeks, a settlement was reached in principle on a payment term, with remaining terms to be memorialized in writing, subject to negotiation and consent, to be signed by both parties.

19. On or about February 2, 2025, Larry Del Santo, President of Defendant's production company, Nuyorican Productions, requested that BackGrid provide a signed settlement agreement and corresponding invoice in connection with a negotiated resolution of the infringement claims. BackGrid promptly did so.

20. As of the filing of this Complaint, Ms. Lopez has not signed the settlement agreement, performed its obligations, or consented to its terms (aside from the payment term) in any other way.

21. As of the time of this Complaint, the infringements are ongoing in that the Images continue to be displayed on Ms. Lopez's social media accounts.

22. Lopez has previously been involved in litigation concerning the unauthorized use of photographs in this judicial district (*see* Case No. 2:19-cv-08598). This prior litigation placed Ms. Lopez on notice regarding the legal requirements and

potential consequences associated with the use of copyrighted images without proper authorization. Despite this, Ms. Lopez has continued to engage in similar conduct, demonstrating a willful disregard for BackGrid's copyrights through a pattern of behavior that undermines the rights of content creators.

## CLAIM ONE

### (For Copyright Infringement, 17 U.S.C. § 501)

23. All prior paragraphs are incorporated into this claim.

24. Plaintiff is the copyright owner of the protected Images named above in this Complaint.

25. Defendant has reproduced, displayed, or otherwise copied the Images without Plaintiff's authorization or license.

26. The foregoing acts of Defendant infringed upon the exclusive rights granted to copyright owners under 17 U.S.C. § 106 to display, reproduce, and distribute their work to the public. Such actions and conduct constitute copyright infringement in violation of 17 U.S.C. §§ 501 et seq.

27. Plaintiff has complied in all respects with 17 U.S.C §§ 101 et seq. and secured and registered the exclusive rights and privileges in and to the copyright of the above-referenced work in accordance with 17 U.S.C § 408.

28. Plaintiff suffered damages as a result of Defendant's unauthorized use of the Images.

29. Having timely registered copyright in the Infringed Images, Plaintiff is entitled to elect statutory damages under 17 U.S.C. § 412 and § 504(c), in an amount of not less than $750 or more than $30,000 per infringement of each work.

30. Plaintiff alleges, on information and belief, that Defendant's actions were intentional or in reckless disregard of Plaintiff's copyrights, and that such actions support an award of enhanced statutory damages for willful infringement under the Copyright Act, 17 U.S.C. § 504(c)(2), in the sum of up to $150,000 per infringed work.

31. In the alternative, Plaintiff is entitled to recovery of its actual damages and Defendants' profits attributable to the infringement of the Infringed Images, under 17 U.S.C. § 504(b).

32. Within the time permitted by law, Plaintiff will make its election between actual damages and profit disgorgement, or statutory damages.

33. Plaintiff is also entitled to an award of attorney fees and other expenses under 17 U.S.C. § 412 and § 505.

## CLAIM TWO

### (Vicarious and/or Contributory Copyright Infringement)

34. All prior paragraphs are incorporated into this claim.

35. If Defendant is not liable as direct infringer of the Images, she is secondarily liable for the infringements directly committed by individual employees, contractors, or other infringers presently unknown (the "Direct Infringers").

36. Defendant contributed to, induced, or assisted infringements by the Direct Infringers. Those Direct Infringers infringed while acting under Defendant's direction and control and/or using technology, facilities, and support services provided by Defendant.

37. Defendant had, or should have had, knowledge of the infringements of the Direct Infringers. Further, Defendant had the right and ability to supervise the infringing activity of the Direct Infringers because the infringements occurred on social media accounts that she owns and operates.

38. Defendant obtained some financial benefit from the infringement of plaintiff's rights in the Image because the Images were a draw for viewers to the social media account, regardless of the revenue received from any specific use, and because the social media accounts were for the purpose of marketing Defendant. Accordingly, Defendant had an incentive to permit and even encourage infringement by the Direct Infringers.

39. As a direct and proximate result of said acts of secondary infringement, Plaintiff has suffered substantial damages in an amount to be proven at trial.

40. Having timely registered copyright in the Infringed Images, Plaintiff is entitled to elect statutory damages under 17 U.S.C. § 412 and § 504(c), in an amount of not less than $750 or more than $30,000 per infringement of each work.

41. Plaintiff alleges, on information and belief, that Defendant's actions were intentional or in reckless disregard of Plaintiff's copyrights, and that such actions support an award of enhanced statutory damages for willful infringement under the Copyright Act, 17 U.S.C. § 504(c)(2), in the sum of up to $150,000 per infringed work.

42. In the alternative, Plaintiff is entitled to recovery of its actual damages and Defendants' profits attributable to the infringement of the Infringed Images, under 17 U.S.C. § 504(b).

43. Within the time permitted by law, Plaintiff will make its election between actual damages and profit disgorgement, or statutory damages.

44. Plaintiff is also entitled to an award of attorney fees and other expenses under 17 U.S.C. § 412 and § 505.

## CLAIM THREE

### (Breach of Contract – In the Alternative)

45. All prior paragraphs are incorporated into this claim.

46. Ms. Lopez never signed the settlement agreement, which therefore never took effect. Aside from the payment term, she has not consented to the bargain represented by the agreement that BackGrid signed. That agreement is therefore merely an offer from BackGrid that Defendant has either never accepted or has rejected by her conduct in refusing to sign and perform.

47. To the extent that the offer to settle the copyright infringement claims is still open, and that Defendant's conduct is not a rejection of that offer, by filing this Complaint Plaintiff withdraws the offer.

48. Nevertheless, solely if Defendant contends that the parties have an enforceable settlement agreement and the Court agrees, Plaintiff makes this claim for breach of contract in the alternative to the copyright claims.

49. Plaintiff has performed all applicable obligations, conditions, and covenants required by the settlement agreement except to the extent that such obligations, conditions, or covenants have been excused or prevented by the conduct of Defendant.

50. Defendant has failed and refused, and continues to fail and refuse, to perform its obligations under the settlement agreement and, as alleged above, has therefore breached the settlement agreement.

51. As a proximate cause of Defendant's breaches, Plaintiff has been damaged in an amount to be proven at trial. Plaintiff's damages continue to accrue, as it is incurring attorney fees and costs in enforcing the agreement.

52. The settlement agreement permits a party prevailing on a claim under it or to enforce it to recover actual attorney fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following:

A. For a preliminary and permanent injunction against Defendant and anyone working in concert with her from further copying or displaying the Images;

B. For an order requiring Defendant to account to Plaintiff for their profits and any damages sustained by Plaintiff arising from the acts of infringement;

C. As permitted under 17 U.S.C. § 503, for impoundment of all copies of the Images used in violation of Plaintiff's copyright—including digital copies or any other means by which they could be used again by Defendant without Plaintiff's authorization—as well as all related records and documents;

D. For actual damages and all profits derived from the unauthorized use of the Images or, where applicable and at plaintiffs' election, statutory damages;

E. For an award of pre-judgment interest as allowed by law;

F.  For actual or reasonable attorney fees, court costs, expert witness fees, and all other costs authorized by agreement or under law;

G.  For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all issues permitted by law.

Dated: May 17, 2025            Respectfully submitted,

**PERKOWSKI LEGAL, PC**

By:   /s/ Peter Perkowski
        Peter E. Perkowski

        Attorneys for Plaintiff
        BACKGRID USA, INC.